UNITED STATES of America

v.

Elmer J. BROD.

Crim. No. 70–H–291.

United States District Court,
S. D. Texas,
Houston Division.

March 18, 1971.

Anthony J. P. Farris, U. S. Atty., Dewey F. Meadows, Asst. U. S. Atty., Houston, Tex., for plaintiff.

Melvin Engel, Houston, Tex., for defendant.

SINGLETON, District Judge.

*Opinion and Order:*

The grand jury has charged defendant Elmer J. Brod with a felonious violation of the tax laws of the United States. Specifically, the taxpayer defendant stands indicted for three counts of income tax evasion. 26 U.S.C. § 7201, and three counts of signing a false return, 26 U.S.C. § 7206(1). Believing that the investigation was conducted in disharmony with the decision in Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), taxpayer has moved for the suppression of all evidence elicited from him in violation of the principles announced in *Miranda,* *supra.*

The taxpayer in this prosecution is a man of extremely limited educational experience, having only a fifth grade education. He is a farmer by·vocation. His first encounter with government agents in this matter occurred on December 9,

1966, when Revenue Agent[1] Grantham visited taxpayer's residence concerning his 1965 income tax return. When the interview was concluded, Grantham requested photocopies of the taxpayer's bank ledger sheets and deposit tickets. The second interview by Grantham took place on April 27, 1967, at the IRS office in Bay City, Texas. At this time, taxpayer was questioned about his 1964 and 1966 income tax returns. A third interview transpired on May 3, 1967, again in the Bay City IRS office, at which time Brod voluntarily appeared with his 1964 tax records. The fourth interview took place in the IRS office on May 17, 1967. Subsequently, on September 5, 1967, Grantham made the decision to refer Brod's case to the Intelligence Division. Thereafter, on March 26, 1968, Grantham approached taxpayer for a fifth meeting at taxpayer's residence, but on that occasion he was accompanied by Special Agent[2] Gilligan. It is disputed as to whether Gilligan identified himself as a Special Agent and attempted to inform the taxpayer of his criminal investigatory function. There is, however, no doubt that Gilligan did not at any time during this interview warn the taxpayer in accordance with the *Miranda* decision, *supra*. One day later, on March 27, Mr. Brod met for a sixth time with the two agents at the Security Bank & Trust Company in Wharton, Texas, where an inventory of his safe deposit box was made. The seventh contact was at the Brod residence on April 26, 1968. At this meeting the agents requested the Brods' income tax returns for the years 1956 through 1957 and 1961. The eighth interview was on April 29, 1968, at the offices of the taxpayer's accountant at which the taxpayer and both agents were present. A few days later on May 3, the Intelligence Division made a determination to conduct a full-scale investigation of Brod's financial affairs. A final meeting between taxpayer and the two agents took place on June 13, 1968, at Brod's home. It was at this late date that Gilligan informed the taxpayer of his *Miranda, supra,* rights.

The government urges that the motion to suppress be overruled on the authority of United States v. Prudden, 424 F.2d 1021 (5th Cir. 1970), and its progeny, United States v. Tonahill, 430 F.2d 1042 (5th Cir. 1970). *See also* Agoranos v. United States, 409 F.2d 833 (5th Cir. 1969); Marcus v. United States, 422 F. 2d 752 (5th Cir. 1970). In *Prudden, supra,* the court rejected the rule adopted by the Seventh Circuit in United States v. Dickerson, 413 F.2d 1111 (7th Cir. 1969), that *Miranda* warnings must be given a taxpayer at the inception of first contact with him following the transfer of a tax case to the Intelligence Division. Instead, the court in *Prudden, supra,* followed an earlier decision in United States v. Montos, 421 F.2d 215 (5th Cir. 1970), requiring that each case must be examined to determine where there were present the compulsive factors with which *Miranda* was concerned. The court, however, did make it explicitly clear in *Prudden, supra,* that "*Miranda* warnings are not constitutionally required in tax investigations where the taxpayer is not deprived of his freedom and is not actually compelled or coerced to furnish statements or documents." (424 F.2d 1030). *See Miranda, supra,* at p. 444, 86 S.Ct. 1602.

Notwithstanding the apparent applicability of *Prudden, supra,* to the case *sub judice,*[3] the government's reliance upon

---

1. The significance of the title "Revenue Agent" is that a person working for the Internal Revenue Service in that capacity conducts routine investigations, which, when begun, are not necessarily expected to result in criminal penalties.

2. A "Special Agent" is one who, among other things, investigates the possibilities of criminal tax fraud. *See* IRS News Release No. 897, Oct. 3, 1967.

3. The obvious factual distinction between the instant case and *Prudden, supra,* and *Tonahill, supra,* is the educational level of each taxpayer under investigation. Both Prudden and Tonahill were lawyers, while Brod never went beyond the fifth grade. Thus, what is coercive to a Brod might not be to a Prudden or a Tonahill.

these cases is misplaced. On October 3, 1967, IRS made public a news release which in detail describes what advice a Special Agent must give to the taxpayer with regard to his constitutional rights. *See* IRS News Release IR–897, October 3, 1967, appended to this opinion. On initial contact with the taxpayer, the Special Agent must produce his credentials and inform the taxpayer that his function is to investigate the possibilities of tax fraud. If the potential criminal aspects of the matter are not resolved by preliminary inquiries and further investigation becomes necessary, the Special Agent is required to advise the taxpayer of his constitutional rights to remain silent and retain counsel. If the taxpayer is taken into custody, the agent must give a comprehensive statement of rights before any interrogation. Thus, IRS took upon itself the obligation to "insure uniformity in protecting the constitutional rights of all persons."

Here, the Special Agent failed to comply with the procedure presented in the news release. The taxpayer was not told of his right to retain counsel and remain silent until June 13, 1968, after he had been interrogated by Agent Gilligan on four previous occasions. The news release does not contemplate that the agent wait until he had enough information to convict before he informs the taxpayer of his rights, but that if, after preliminary inquiries at the Special Agent's first meeting with the taxpayer, the Agent is still not satisfied that the taxpayer is free of criminality, he should do so at that time. Preliminary inquiries do not extend beyond the initial contact with the taxpayer and certainly do not approach the remoteness of the time when the required warnings were given in this case. That this is so was recognized in *Prudden, supra,* 424 F.2d p. 1030, n. 3:

> "That the Internal Revenue Service has voluntarily taken upon itself to now give a taxpayer *Miranda* type warnings and advice at the Special Agent's first meeting with him, does

not give taxpayers questioned before the promulgation of this order additional constitutional rights."

Evidence obtained in violation of these procedures should not be admitted into court. United States v. Leahey, 434 F. 2d 7 (1st Cir. 1970); United States v. Heffner, 420 F.2d 809 (4th Cir. 1970). In United States v. Leahey, *supra,* the court took note of two intersecting factors—a general guideline, deliberately devised, aiming at accomplishing uniform conduct of officials which affects the past-offense conduct of citizens involved in a criminal investigation; and an equally deliberate public announcement, made in response to inquiries, on which many taxpayers and their advisors could reasonably and expectably rely—and held "that the agency had a duty to conform to its procedure, that citizens have a right to rely on its conformance, and that the courts must enforce both the right and the duty." (434 F.2d 7, 11). Similarly, in United States v. Heffner, *supra,* where the same conclusion was reached, the court observed:

> "An agency of the government must scrupulously observe rules, regulations, or procedures which it has established. When it fails to do so, its action cannot stand and courts will strike it down."

The results in both *Leahey, supra,* and *Heffner, supra,* were based on an analogy drawn from a series of cases beginning with United States ex rel. Accardi v. Shaughnessy, 347 U.S. 260, 74 S.Ct. 499, 98 L.Ed. 681 (1954), where a deportation order was vacated because the Board of Immigration and the Department of Justice failed to follow their own established procedures. Thus, an agency's failure to conform to its own standards denies due process to one who is thereby deprived of substantial rights.

■ United States v. Luna, 313 F. Supp. 1294 (W.D.Tex.1970) is cited by the government for the proposition that administrative agencies cannot dictate rules of evidence to federal courts. As was recognized in *Leahey, supra,* this

contention is beside the point. "The decision as to the exclusionary implications of violation of the procedure is ours, and based on our sense of the duties and rights so created." (434 F.2d 7, 10) The question is not one of what extent administrative agencies may bind the courts, but whether the court should exclude evidence so that agencies will follow the regulations they have formally and purposefully adopted in the light of the requirements of the Constitution, even though the regulations adopted go beyond what is mandatory under the Constitution. Unquestionably, there must be an affirmative answer to the latter question.

■ It is accordingly ordered that the defendant's motion to suppress be granted, but only as to evidence obtained from the defendant subsequent to the end of the March 26, 1968, interview and before the *Miranda* warnings were given the defendant on June 13, 1968.

### APPENDIX

In response to a number of inquiries the Internal Revenue Service today described its procedures for protecting the Constitutional rights of persons suspected of criminal tax fraud, during all phases of its investigations.

Investigation of suspected criminal tax fraud is conducted by Special Agents of the IRS Intelligence Division. This function differs from the work of Revenue Agents and Tax Technicians who examine returns to determine the correct tax liability.

Instructions issued to IRS Special Agents go beyond most legal requirements to assure that persons are advised of their Constitutional rights.

On initial contact with a taxpayer, IRS Special Agents are instructed to produce their credentials and state: "As a special agent, I have the function of investigating the possibility of criminal tax fraud."

If the potential criminal aspects of the matter are not resolved by preliminary inquiries and further investigation becomes necessary, the Special Agent is required to advise the taxpayer of his Constitutional rights to remain silent and to retain counsel.

If it becomes necessary to take a person into custody, Special Agents must give a comprehensive statement of rights before any interrogation. This statement warns a person in custody that he may remain silent and that anything he says may be used against him. He is also told that he has the right to consult or have present his own counsel before making a statement or answering any questions, and that if he cannot afford counsel he can have one appointed by the U. S. Commissioner.

IRS said although many Special Agents had in the past advised persons, not in custody, of their privilege to remain silent and retain counsel, the recently adopted procedures insure uniformity in protecting the Constitutional rights of all persons.