**UNITED STATES of America**

v.

**James Judson PHIFER.**

**Crim. No. 69–H–437.**

United States District Court,
S. D. Texas,
Houston Division.

Dec. 8, 1971.

Anthony J. P. Farris, U. S. Atty., Theo W. Pinson, III, Asst. U. S. Atty., Houston, Tex., for plaintiff.

William M. Schultz, Schultz & de-Ybarrondo, Houston, Tex., for defendant.

## ORDER TO SUPPRESS EVIDENCE

SINGLETON, District Judge.

Defendant Phifer in this case is accused of violating three counts of criminal income tax evasion for the years 1965, 1966, and 1967 under 26 U.S.C. § 7201.

Defendant has moved on various grounds to suppress certain evidence obtained from an interview between the defendant taxpayer and two special agents from the Internal Revenue Service (IRS) on March 21, 1968. To fully

show the nature of the problem involved, however, this court must look back into time and discuss other contacts between defendant and the government before the IRS conducted the interview in question.

In early 1967, the Federal Bureau of Investigation (FBI) conducted an investigation concerning alleged illegal activities relating to shipments by the Southern Pacific Railway Company in Houston, Texas. Defendant Phifer was an employee of the Southern Pacific Railway Company whose work at that time was connected with the activities being investigated by the FBI. Phifer became a suspect in this investigation. At that time, Phifer employed an attorney, and this attorney represented him throughout this investigation. After this attorney had been employed, the attorney notified the FBI agents involved that he represented the defendant and requested them not to contact his client without the attorney's permission.

The FBI investigation resulted in no charges being filed, but the FBI did prepare a report which was furnished to the United States Attorney's Office, and this report stated that the defendant had retained an attorney. In late 1967, apparently in November, there was a meeting in the United States Attorney's Office among the FBI agent involved in the Phifer investigation, an assistant United States attorney, and one of the IRS agents that later conducted the May, 1968, interview with Phifer. At this meeting, the assistant United States attorney showed the IRS agent canceled checks which caused the IRS to investigate the defendant. The IRS agent only stayed at the meeting a short time, but he later briefly read the FBI report which contained the information that Phifer had an attorney.

The interview in question by the IRS agent took place at the defendant's place of work on March 21, 1968. The evidence is contested, but according to the IRS agent, two special agents of the IRS asked Phifer if his tax returns for 1964–1966 reflected all his income. When Phifer replied affirmatively, they showed him copies of canceled checks showing other funds received but unreported by him. The agents then toward the end of the interview gave him *Miranda* warnings including his right to have an attorney present. He continued to answer questions until the defendant and the IRS agents drove to defendant's home, when the defendant refused to answer further questions until he could talk with his attorney.

The defendant has moved to suppress all information and statements obtained from him and any leads obtained therefrom by the IRS agents in their March 21, 1968, interview. The defendant bases his motion in part on the failure on the part of the IRS agents initially to give defendant his *Miranda* warnings. The Fifth Circuit has held in United States v. Prudden, 424 F.2d 1021 (5th Cir. 1970), that absent elements of coercion, *Miranda* warnings are not constitutionally required at initial interviews concerning criminal tax fraud. Arguably, there are special circumstances in this case which would take it out of the *Prudden* doctrine. Defendant here was questioned at his job where he might feel pressure to cooperate with the IRS for fear that if he proved recalcitrant his employer or fellow employees might somehow disapprove. Further, unlike the defendant in *Prudden*, Phifer was not a highly educated man and thus would be more likely to feel compelled to answer the agents' questions. But because of the two grounds for ordering suppression set out below, this court need not answer the question of whether there was enough coercion present to require *Miranda* warnings.

 The IRS in this interview was required to inform defendant of his right to counsel and his right to remain silent at the outset of the interview. An IRS bulletin, released on October 3, 1967, in IRS News Release IR–897, states that on the "initial contact" with the taxpayer *Miranda* warnings need not be given. But, according to the release,

if any potential criminal aspects of the matter are not resolved by preliminary inquiries and further investigation becomes necessary, the agents must warn the taxpayer of his constitutional rights. Normally, this would mean that the warnings are not required at the first interview with the taxpayer. But these circumstances of this investigation were unusual. Here, the IRS already had canceled checks and other documents that, along with the defendant's tax returns, indicated a strong possibility of criminal tax evasion. Also, both the FBI and the United States Attorney's Office had investigated the defendant for criminal violations concerning activities that were the basis for the investigation into the alleged criminal tax fraud. Thus, this initial interview with the taxpayer was neither an "initial contact" nor a "preliminary inquiry" within the meaning of the IRS bulletin because of these earlier investigations by other branches of the government. These earlier investigations had already shown that the "potential criminal aspects" were not resolved; too many nails had been driven into the coffin for the government to argue it was an initial, exploratory interview. Since the IRS did not comply with its own news release in force at the time of the interview, due process requires that evidence obtained from the interview until defendant was given his *Miranda* warnings should be suppressed. United States v. Brod, 324 F.Supp. 800 (S.D.Tex.1971); United States v. Leahey, 434 F.2d 7 (1st Cir. 1970); United States v. Heffner, 420 F.2d 809 (4th Cir. 1970).

But there is a more fundamental reason why the evidence from most of the interview was tainted. Under the peculiar facts of this case the taxpayer should have been warned of his constitutional rights regardless of how one construes the IRS news release. Here, defendant retained an attorney at least in part to give him legal advice concerning a government investigation of certain activities by the defendant while employed by the Southern Pacific Railway Company. There were three agencies of the government all in the same building which at various times investigated defendant about these activities. Phifer's attorney told the FBI special agent not to interview defendant without the attorney's permission. This agent prepared a report which stated Phifer had an attorney. This report and incriminating documents were furnished to the United States Attorney's Office. In November, 1967, there was a meeting among the FBI agent who had conducted the initial FBI investigation at the Southern Pacific Railway Company yards, an assistant United States attorney, and the IRS agent who later interviewed Phifer. At this meeting Phifer's activities that had been investigated by the FBI and which activities gave rise to the IRS investigation were discussed. This meeting had been called by the assistant United States attorney. The evidence is clear that at the time of this meeting this United States attorney knew that Phifer had had an attorney in connection with the FBI investigation. The IRS agent involved testified that at the time of this meeting he did not know that Phifer had an attorney in connection with the FBI investigation. However, the evidence is clear that either at this meeting or shortly thereafter and before the interview in question the IRS agent read the FBI investigation report in which it was related that the defendant had an attorney. Six months after this meeting among these governmental agencies, the IRS conducted the interview in question.

The defendant here retained an attorney to advise him on the very matter that was the basis of the tax evasion indictment. The FBI knew that Phifer had an attorney, and the attorney told them not to contact his client without the attorney's permission. The information gathered by the FBI provided the basis for the IRS' tax evasion investigation. This in itself may not be enough to impute the FBI's knowledge to the IRS. But this added to the other instances of interaction and contact be-

tween the governmental agencies involved leads this court to hold that the IRS should have known about Phifer's attorney and either should have contacted the attorney before the IRS agents interviewed Phifer or warned Phifer of his constitutional rights before the questioning began. Therefore, since the IRS did not contact defendant's attorney before conducting the interview, due process requires the evidence obtained from that interview must be suppressed until the time the defendant was informed of his right to remain silent and of his right to an attorney.

■ The government contends that even if the IRS knew about the taxpayer's attorney it would not contact him unless a power of attorney has been filed with the IRS. This policy gives small protection to the taxpayer and makes his lawyer of little help to him, since normally a taxpayer would not file a power of attorney (if he would do it at all) until after he has already been interviewed. Thus, the only people who would file a power of attorney are either those extremely knowledgeable about tax matters or those with a prior history of tax difficulties. To the average citizen, the IRS procedure means that he will conduct the interview with the IRS without the benefit of counsel even if he has retained a counsel. Unfortunately, the result seems to be a different class of justice for the wealthy and intelligent elite than for the average citizen.

■ The government also argues that to contact the attorney might make the IRS liable under 26 U.S.C.A. § 7213 which prohibits unauthorized disclosure of tax returns. This would be a problem if the attorney wanted access to his client's tax returns, but it should not bar simply informing the attorney when the IRS wishes to interview his client.

The Supreme Court has stressed the federal judiciary has the duty of "establishing and maintaining civilized standards of procedure and evidence." McNabb v. United States, 318 U.S. 332 at 340, 63 S.Ct. 608 at 613, 87 L.Ed. 819 (1943). To carry out this mandate, this court must suppress all evidence obtained from that part of the interview which took place before the IRS advised Phifer he was entitled to have an attorney present.

It is ordered, adjudged, and decreed that defendant's motion to dismiss is denied.

It is further ordered, adjudged, and decreed that defendant's motion to suppress evidence is granted for all evidence obtained from the interview until the time defendant was informed of his right to counsel and to remain silent.