**UNITED STATES of America,**
**Appellant,**

v.

**Leslie P. BEMBRIDGE, Defendant-**
**Appellee.**

**No. 72-1025.**

United States Court of Appeals,
First Circuit.

Heard April 3, 1972.

Decided April 28, 1972.

Wayne B. Hollingsworth, Asst. U. S. Atty., with whom Joseph L. Tauro, U. S. Atty., was on brief, for appellant.

James R. McGowan, Providence, R. I., with whom Lester H. Salter, Harold C. Arcaro, Jr., Alan L. Swartz, and Salter, McGowan, Arcaro & Swartz, Providence, R. I., were on brief, for appellee.

Before ALDRICH, Chief Judge, and McENTEE and COFFIN, Circuit Judges.

COFFIN, Circuit Judge.

An information was brought against taxpayer appellee, charging him with failing to file tax returns for calendar years 1965, 1966, and 1967. Taxpayer moved to suppress certain of his records, oral statements and evidence derived therefrom on the due process ground that such evidence was obtained from him by a Special Agent of the Internal Revenue Service in violation of the warning procedures announced in two IRS news releases. The district court granted the motion, 335 F.Supp. 590, and the government appeals.

Special Agent Niro called taxpayer on two occasions in early December, 1968, identified himself as a Special Agent of the IRS, arranged an appointment for December 9 and asked taxpayer to bring along personal corporate books and records for certain years. At taxpayer's request, the IRS office in Worcester was designated as the place for the meeting. No reference was made in either telephone conversation to the criminal nature of the investigation. At the appointed time, taxpayer appeared, with a briefcase of records.

After calling in another IRS enployee to join the meeting, Niro, the court found, read the following from a card he had prepared:

"I am a Special Agent with the Intelligence Division of the Internal Revenue Service. As a Special Agent, one of my functions is to investigate the possibility of criminal violation of the Internal Revenue Laws and related offenses.

"You don't have to say anything, or submit anything that might tend to incriminate you, and anything you say, or any information that you submit may be used against you in any proceedings undertaken by the U. S. Government. Also, you may have an attorney present during any questioning. Do you understand this?"

After taxpayer indicated that he understood these rights, a lengthy conference ensued. At its conclusion, taxpayer left the documents with the Special Agent and, during the following seven weeks, made three more deliveries of records to the IRS office. Only after taxpayer's secretary was served a summons in April, 1969, did he consult an attorney.

The court found, and we fully agree, that the Special Agent's statement was in compliance with the most recent Internal Revenue Manual change, effective on October 21, 1968. It was also in accord with a November 26, 1968, IRS news release which announced changes in the procedure for advising taxpayers of their rights. The release stated in relevant part:

"One function of a Special Agent is to investigate possible criminal violations of Internal Revenue laws. At the initial meeting with a taxpayer, a Special Agent is now required to identify himself, describe his function,

and advise the taxpayer that anything he says may be used against him. The Special Agent will also tell the taxpayer that he cannot be compelled to incriminate himself by answering any questions or producing any documents, and that he has the right to seek the assistance of an attorney before responding."

The warnings given by the Special Agent did not use a sentence quoted in an earlier IRS news release, dated October 3, 1967, which was the only warning required in a first meeting between a Special Agent and a taxpayer: "On initial contact with a taxpayer, IRS Special Agents are instructed to produce their credentials and state: 'As a special agent, I have the function of investigating the possibility of criminal tax fraud.' "

The district court, while finding that the Special Agent read the card above quoted, also found that he did not "describe his function", as provided in the 1968 news release. The court went on to say that the case fitted squarely within our ruling in United States v. Leahey, 434 F.2d 7 (1st Cir. 1970), which it characterized as invalidating any taxpayer production of documents unless "the magic words" of the 1967 news release relating to criminal tax fraud were first spoken. The court further observed that suppressing the evidence in this case worked a grave injustice to the proper enforcement of the tax laws simply because a minor IRS official, while obeying all regulations and without invading any constitutional rights, did not "recite every syllable of a mumbo-jumbo formula". We are in complete agreement with the court's view that if *Leah-*

*ey* mandates this result, we have erred grievously.

In *Leahey*, a Special Agent gave no warning whatsoever at a time when the 1967 press release with its precise formulation in terms of "criminal tax fraud" was the latest applicable. The agent had violated both an internal procedure devised to secure uniformity of treatment and a deliberate public announcement. We held that the agency "had a duty to conform to its procedure, that citizens have a right to rely on conformance, and that the courts must enforce both the right and the duty." 434 F.2d at 11. In the instant case the agent conformed to both the internally required procedure and to the subsequent most recently published version of it.

Wholly apart from our disinclination to view an agency as irrevocably locked into the specific verbal formulation of a prior news release, we fail to see how the later warning couched in terms of possible criminal violations of Internal Revenue laws would be any less effective in putting a taxpayer on his guard than the earlier one directed only at the possibility of criminal tax fraud. While a taxpayer ought not be confronted with a civilian Trojan horse bearing criminal investigators, we suspect that he would be just as concerned in being told that he was being investigated for one species of tax crime as another. Indeed, a notice confined to tax fraud might well mislead a sophisticated taxpayer in the position of the appellee, who was investigated and prosecuted not for tax "fraud" under 26 U.S.C. § 7206 but for wilful failure to file returns under 26 U.S.C. § 7203.[1] We therefore hold that

---

1. Counsel for appellee argues that the earlier notice language, "I have the function", together with the reference to fraud has "an alerting potential" not present in the "vaguely woolly" references to "one of my functions" and "criminal violations . . . and related offenses." Proof of the pudding, he urges, is the fact that in April, 1969, when at last, according to taxpayer, the Special Agent told him he was looking for tax fraud, he immediately consulted a lawyer. A more obvious reason would seem to us the fact that this conversation arose out of the serving of a summons on taxpayer's secretary.

there was no failure of due process under *Leahey* and that the motion to suppress should not have been granted.[2]

We add that while we would not have supposed *Leahey* to call for such an expansionist interpretation in any event, the entire hearing proceeded on the assumption that there had been only one press release and one internal manual order. Although the 1968 news release was both an exhibit attached to the motion to suppress and had been admitted into evidence by agreement, it was not called to the Special Agent's or to the court's attention during the hearing. The best the Special Agent could do when asked the source of the wording on his warning card was to say that "As I recall, there was another document that superseded [the earlier manual reference]." Counsel for taxpayer argued vigorously that the Special Agent had ignored his own internal manual directive, had done his own paraphrasing of his function description, and was giving different treatment to taxpayer than to all others similarly situated. Not until the very end of the hearing was the subsequent manual order brought to the court's attention by government counsel. Even then counsel was unable to inform the court that the subsequent instructions had been made public, although the 1968 news release had been in the case from the beginning. While the court ultimately became acquainted with the later instructions and news release, the fact that they played almost no part in the testimony and argument may very well have colored the court's view. That this may have occurred is attributable to the overzealousness of taxpayer's counsel and unawareness on the part of the government.

Reversed and remanded for further proceedings.

2. Appellee in his brief has argued that the record does not disclose a sufficient waiver of his Fourth and Fifth Amendment rights. Wholly apart from the question of the applicability of such rights to IRS investigations, *cf.* United States v. Leahey, *supra*, 434 F.2d at 8 n. 2, their violation was not put in issue by the motion to suppress.