UNITED STATES of America, Plaintiff,

v.

PRICE BROTHERS COMPANY, Superior Products Company, J. Warren Back, Richard U. Rex, and William P. McDermott, Defendants.

**Crim. No. 88–CR–80780–DT.**

United States District Court,
E.D. Michigan, S.D.

Sept. 26, 1989.

---

David F. Hils, U.S. Dept. of Justice, Antitrust Div., Cleveland, Ohio, for U.S.

William A. Sankbeil, Edward C. Cutlip, Jr., Detroit, Mich., for Price Bros. Co.

Leslie W. Jacobs, Thomas F. Zych, Cleveland, Ohio, David F. Dumouchel, Detroit, Mich., for Superior Products Co.

Kenneth M. Mogill, Eugene Driker, Andrew M. Zack, Detroit, Mich., for J. Warren Back.

Leslie W. Jacobs, Thomas F. Zych, Cleveland, Ohio, for Richard U. Rex.

Gregory L. Curtner, S. Allen Early III, Detroit, Mich., for William P. McDermott.

## MEMORANDUM OPINION AND ORDER

WOODS, District Judge.

All defendants jointly move this Court, pursuant to F.R.Crim.P. 12(b)(1), to dismiss the indictment in this action. Defendants claim that defects in the institution of the prosecution of this case have resulted in violations of their Fourth and Fifth Amendment rights.

### I.

In brief, defendants allege that, for over fifty years, there has been in existence a liaison agreement (the Agreement) between the Federal Trade Commission (FTC) and the Department of Justice (DOJ) which the two agencies use to allocate their dual jurisdiction over the antitrust laws. As described in the Antitrust Division Manual, the Agreement states that before either agency begins an investigation, that agency will inform the other as to the parties, products, geographic area, and probable charges contemplated by the investigation. Under the Agreement, neither agency may begin an antitrust-related investigation until clearance is granted; routine clearance requests are handled within three days to a week. Objections to clearance may arise on various grounds, primarily: Substantially identical investigations may be under consideration in each agency. One agency may have developed what it considers to be a high degree of expertise regarding a particular firm, industry or type of conduct. An agency may have pending litigation or a decree involving the same general area or industry proposed for investigation. Or, one agency may have already done substantial preparatory work on a particular area. Clearance objections and conflicts between the two agencies are negotiated.

Further provisions of the Agreement contemplate that if a matter is before the FTC and the FTC decides that the facts may warrant criminal action, the FTC will refer the matter to the DOJ to determine whether it should be presented to a grand jury. If the DOJ determines that a grand jury investigation is necessary, the DOJ will request that the FTC transfer the matter. Otherwise, the FTC may proceed with its own investigation.

An additional function of the liaison agreement is to exchange evidence and information between the two agencies, in the event that one agency has materials which may be useful for an investigation being conducted by the other.

As to both of the latter two situations, however, the defendants claim that these provisions come into play only when a "cleared" FTC investigation turns up evidence of other criminal activity not originally contemplated by the FTC.

In sum, defendants claim that the process has repeatedly been represented to the public as, and has been faithfully adhered to as, a commitment by the DOJ not to challenge criminally any conduct that has been cleared for investigation by the FTC. In turn, the defendants claim, antitrust practitioners and their clients have long

relied on the liaison procedure to ascertain whether a particular investigation is criminal or civil and, in turn, the extent to which the subject of an investigation can cooperate with the government.

## II.

Defendants support their motion with affidavits from two former agency heads: Thomas Kauper served as the Assistant Attorney General in charge of the Antitrust Division of the DOJ from 1973–1976, Lewis Engman served as Chairman of the FTC from 1973–1975. Both affidavits state that the Agreement is widely known and relied upon by antitrust practitioners, and that the purpose of the Agreement is to protect defendants from the unfairness of dual or multiple federal government proceedings based on the same conduct. Each affidavit states that under the Agreement, the FTC was obligated to disclose the scope of its proposed investigation in the instant case to the DOJ and that, to the affiant's knowledge, the DOJ has never before instituted criminal proceedings relating to the same conduct and parties previously subject to investigation by the FTC. The Engman affidavit goes further, to state that the two agencies have always agreed that it would be highly improper to use civil process to investigate potential criminal charges, and to opine that "the breach of the Agreement and the resultant inducement of the parties' cooperation in an investigation that culminated in the present criminal prosecution amounted to a violation of the parties' right to due process of law and their right against self-incrimination."

Affidavits submitted by defendants' counsel aver that defendants did in fact rely on the fact that this was a civil investigation only and that defendants cooperated accordingly. As a result, defendants contend, their Fourth Amendment protection against unreasonable search and seizure, their Fifth Amendment rights to due process, and their Fifth Amendment protection against self-incrimination have all been violated.

Defendants rely on case law developed in the area of Internal Revenue Service (IRS) investigations. In *United States v. Nuth*, 605 F.2d 229 (6th Cir.1979), a taxpayer subject to a criminal investigation complained that the IRS had failed to give him *Miranda*-type warnings as required by IRS regulations. The Sixth Circuit decided that violations of internal guidelines did not automatically require suppression of the evidence, but added that had the taxpayer claimed that he was aware of and/or relied on the IRS regulations, the analysis might be different. Similarly, numerous other IRS cases from different circuits have suppressed evidence where the agency violated long-standing and public procedures or where the IRS improperly used civil process to obtain evidence for a criminal investigation.

Like the IRS cases, the instant case involves actions which may be investigated civilly or criminally. Defendants claim that therefore, like the IRS cases, this case involves an accepted procedure, well-known to practitioners who, when dealing with a civil investigation, can feel reasonably secure that their clients are not the subject of a criminal investigation, and that free cooperation will not harm their clients' interests. Defendants claim that they did so cooperate without the assertion of any privileges, in reasonable, good faith, and justifiable reliance on the Agreement.

Defendants contend that dismissal of the indictment is the only proper relief. Normally, dismissal of an indictment is not required absent egregious conduct on the part of an agency. *United States v. Leahey*, 434 F.2d 7 (1st Cir.1970). Rather, a court must examine instances of a government violation of its own procedures on a case-by-case basis. Defendants here contend that the flagrancy of the agencies' violation of their own agreement, and the magnitude of the constitutional rights implicated warrant dismissal. Moreover, defendants claim that suppressing the evidence obtained from the FTC will not adequately protect their rights, in that that evidence is not an isolated set of documents, but rather is the heart of, and the

road map for, the DOJ's case against the defendants.

### III.

The government states that the defendants' interpretation of the Agreement is in error. The government accurately points out that the Agreement nowhere states that the DOJ is *prohibited* from bringing an investigation that it has previously cleared to the FTC. Rather, the Agreement merely states that neither agency will begin an investigation before clearance is granted—a kind of "duty to inform" provision. The only mention of any concern for the subjects of the investigation is a statement that the "overlapping antitrust enforcement authority necessitates coordination between the two agencies to ensure both efficient use of limited resources and fairness to subjects of antitrust investigations."

There is, in fact, a substantial amount of evidence which shows that the Agreement was not meant absolutely to preclude dual or successive investigations. *See, e.g., Oversight of Antitrust Enforcement: Hearings before the Subcomm. on Antitrust and Monopoly of the Senate Comm. on the Judiciary*, 95th Cong., 1st Sess. 357 (1977) ("It is important to note that the so-called 'clearance' process does not constitute in any way an abdication of either agency's enforcement responsibilities, and both agencies are free under the agreement to proceed in the same matter."). *See also* a 1963 exchange of letters between FTC Chairman Paul Rand Dixon and DOJ Antitrust head Lee Loevenger. In that exchange, Chairman Rand made clear the FTC's position that the FTC retained its freedom under the Agreement to investigate matters involving the Sherman Act even though the DOJ might later bring a criminal action. He assured the DOJ that the FTC would take care not to compromise criminal cases by unwisely granting immunity in the course of its investigations.

The government insists that agency practice has been consistent with this interpretation of the Agreement. The government has presented the affidavit of Judy Whalley, Deputy Assistant Attorney General for Litigation in the Antitrust Division of the DOJ, who states that clearance to the FTC is always subject to the understanding that, should the FTC determine that the facts its investigation develops may warrant criminal action, the FTC will refer the matter back to the DOJ so that the DOJ may decide whether the matter should be presented to a grand jury. The affidavit states that in many cases, including the instant one, the Division states the criminal caveat explicitly. The affidavit also lists the number of cases per year, over the past 14 years, which have been cleared to the FTC with an explicit criminal caveat; those numbers range from 0–4 cases in the years 1975 through 1982, and from 11–35 cases in the years 1983 through 1988. Thus it appears that DOJ policy may have changed substantially after 1982 (and, interestingly, since the time defendants' affiants were in DOJ and FTC positions).

The government cites several cases which involve situations where a defendant was criminally prosecuted on charges involving the same conduct and parties that the FTC had previously investigated. *See United States v. Amrep Corp.*, 405 F.Supp. 1053 (S.D.N.Y.1976); *United States v. Binney & Smith, Inc.*, CR 80–49, 1980 WL 1988 (N.D.Ohio 1980). In one case, *United States v. Chas. Pfizer & Co.*, 1967 Trade Cas. § 72,170 (S.D.N.Y.1967), defendants moved to dismiss the indictment on the grounds that

> it is astonishing and substantially unprecedented for the Department of Justice to proceed criminally after similar charges have been tried on a Federal Trade Commission complaint. Defendants, it is said, "had no reason to believe" such a course might be followed, and thus bared before the Commission defenses which might otherwise have remained secret.

The court in that case denied the motion, stating that the defendants' "surprise" was manufactured, and specifically holding that "antitrust proceedings by the Department of Justice are not to be blocked or impaired by the prior or concurrent action or inaction of the FTC."

Thus, it would appear that dual or successive investigations by the FTC and the

DOJ are not unheard of, although they may be uncommon.[1] Moreover, in this case, at the time of their testimony before the FTC, the three individual defendants (that is, the only defendants who might be entitled to raise the privilege against self-incrimination) were specifically warned by the FTC hearing officer that "immunity from criminal prosecution can be ordered only after the witness claims his privilege against self-incrimination and the Attorney General approves the order of the agency." Accordingly, it should at least have occurred to the defendants and their counsel that subsequent criminal prosecution was not outside the realms of possibility.

█ It is impossible to reconcile the statements of the defendants' affiants averring that such successive prosecutions, if not affirmatively forbidden, at least have *never* before occurred with the statement of the government's affiant and the facts of the cases the government cites. The Court can only conclude that the defendants' affiants are in error. While it is reasonable and logical to conclude that the FTC and the DOJ have tried in the past not to duplicate each other's work, the Court has found no regulation or agreement which actually prohibits them from doing so. Further, such duplicative or successive investigations and proceedings have been undertaken in the past, however rarely. The Court finds that the government violated none of the defendants' constitutional rights in bringing the investigation before the DOJ and subsequent indictment. Accordingly, the Court finds it unnecessary to reach the question of what remedy would have been required to redress such a violation.

### IV.

Defendants have moved for discovery to be conducted to ascertain more information regarding the instant motion, and, subsequently, an evidentiary hearing. Defendants have submitted a list of proposed deponents and a request for documentary materials which they believe will illuminate the role of each deponent in the conduct of the FTC investigation, the procedures which were followed with regard to the successive investigations, the motivations of the agencies, the state of the FTC's or DOJ's pre-clearance knowledge, etc. The Court having concluded, however, that the government was within its rights in pursuing the successive investigations, the Court finds that defendants have failed to make the requisite prima facie showing of governmental misconduct which would entitle them to obtain discovery or an evidentiary hearing.

Accordingly, for the foregoing reasons, IT IS HEREBY ORDERED that defendants' Motion to Dismiss Indictment is DENIED. IT IS FURTHER ORDERED that the accompanying Motion of Defendants for Discovery and Evidentiary Hearing in Support of Defendants' Motion to Dismiss Indictment is DENIED.

So ordered.

---

1. Defendants repeatedly insist that the only successive investigations involve criminal activity uncovered in the course of the FTC investigation but not originally contemplated by the FTC. Many of the cases cited by the government, however, appear to involve criminal investigations of almost precisely the same conduct investigated previously by the FTC.