**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**George M. MICHALS, Defendant-
Appellant.**

**No. 72–1116.**

United States Court of Appeals,
Tenth Circuit.

Nov. 8, 1972.

Rehearing Denied Dec. 8, 1972.

**216**

Richard J. Spelts, Asst. U. S. Atty. (James L. Treece, U. S. Atty., on brief), for plaintiff-appellee.

George J. Francis, Denver, Colo., for defendant-appellant.

Before LEWIS, Chief Judge, and SETH and McWILLIAMS, Circuit Judges.

McWILLIAMS, Circuit Judge.

In a two count indictment, George M. Michals was charged with filing a false and fraudulent income tax return for the years of 1965 and 1966 in violation of 26 U.S.C. § 7201. He was convicted by a jury on both counts and he now appeals. Seven grounds are urged for reversal. They are in the order presented to this court as follows: (1) Improper closing argument by the prosecuting attorney; (2) unclear instruction given to the jury as to the manner in which evidence regarding loans was to be handled in the computation of gross income under the bank deposits plus cash expenditures method of calculating taxable income; (3) improper use of schedules and summaries by certain Government witnesses; (4) failure to suppress certain statements made on February 9, 1968, by Michals to the witness Monahan, a revenue agent of the Internal Revenue Service assigned to its Audit Division; (5) failure to grant Michals' motion for change of venue; (6) admission of evidence which showed that Michals made monthly payments to the Denver Juvenile Court, all of which is said to have conveyed to the jury the allegedly prejudicial suggestion that Michals had previously been involved in a paternity proceeding in that court; and (7) the failure of the trial court to grant Michals' motion for a directed verdict of acquittal. A bit of the background information developed upon trial will put these matters in focus.

Michals, during the years in question, operated a restaurant known as the La Petite, an establishment that was frequented by hippies, among others, and which at one time was the subject of considerable adverse newspaper publicity. Michals' primary sources of income, other than the income derived from his restaurant business, were his winnings at a Denver dog track and his winnings in poker games conducted in a Denver

political club. The Government's evidence showed that for the year 1965 Michals had additional taxable income over that reported in his income tax return in the amount of $6,017.42, resulting in a tax deficiency of $1,163.68, and additional taxable income for 1966 in the amount of $24,510.82 resulting in a tax deficiency for that year of $8,698.45. The Government did not attempt to show precisely where the unreported income came from, but relied upon an indirect method of calculating income, involving an analysis of Michal's bank deposits and cash expenditures.

◼ As concerns the charge of improper closing argument, there was evidence that on one occasion Michals won $22,000 at the dog track and thereafter was the subject of a press conference concerning his winnings. In this connection, his counsel in closing argument suggested that such actions were not those of a person who was hiding income. In response thereto, the prosecuting attorney argued that Michals never talked about his winnings at the dog track unless a "form [had] already [been] filed by somebody else with the Internal Revenue Service." Counsel for Michals asserts that such improperly suggested to the jury that Michals was using an unnamed third party to collect unreported gambling winnings at the dog track on his behalf, and that there was no evidence of such conduct. In thus arguing, counsel takes the remarks out of context. There was evidence that as required by law the dog track authorities routinely filed IRS form 1099 with the Internal Revenue Service on every winning exceeding $600, and did so file on Michals' $22,000 winning. Obviously the "somebody else" reference was to the dog track authorities and not some mysterious third party. The obvious thrust of this counter argument was that Michals only publicly discussed his winnings when he knew the dog track had already reported the fact to the Internal Revenue Service. We find no improper closing argument.

◼◼ Complaint is next made about the trial court's instruction regarding loans and how such should be treated by the jury for purposes of computation of taxable income. Counsel agree that in the use of the bank deposit-cash expenditure method, certain items, such as gifts, loans and inheritances, and the like, are not to be treated as taxable income. The jury was so instructed, although no mention was made of loans. Counsel called this omission to the trial court's attention, and the trial judge immediately instructed the jury in this regard. We concede that the instruction as given is a bit confusing, but in our view such was cleared up by the trial judge's final words that "loans are not taxable income as such." Actually, the matter of loans played a very minor role in this case, to the end that any error would under the circumstances be only harmless. There was no evidence of any loans made to Michals in 1965. In 1966, according to Michals, he did receive loans totalling $4,000 from relatives, which loans were in the main repaid in 1966. Since the loans were thus repaid in the same year such were received, the item would "wash out" for purposes of computation of taxable income, and accordingly any such loan was not included in the Government's calculations.

◼ Error is next predicated on the use by a Government witness of certain summaries and schedules which were prepared by the witness and were projected on a screen for the edification of the jury. We see no need to go into detail on this particular matter. The use of summaries, properly identified, in cases involving complicated documentary proof has been affirmed in numerous cases by us, and the manner in which the matter was handled in the instant case comes well within the rule of Swallow v. United States, 307 F.2d 81 (10th Cir.1962), cert. denied, 371 U.S. 950, 83 S.Ct. 504, 9 L.Ed.2d 499 (1963). In that case, it was held that it was not error to permit the Government's use of summaries of Government's interpretation of evidence in an income tax eva-

sion case, such use being without objection and after thorough cross-examination and subject to an instruction advising the jury concerning their use.

■ On February 9, 1968, Michals was questioned by revenue agent Monahan, who was in the Audit Division of the Internal Revenue Service. The case was later on that same day referred to the Intelligence Division of the Internal Revenue Service for criminal investigation. It is asserted that the statements thus made by Michals, which actually were of only minor significance, should have been suppressed because of the failure of Monahan to advise Michals of his constitutional rights as is said to be required by Miranda v. Arizona, 384 U. S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), and Escobedo v. Illinois, 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977 (1964). In thus arguing, counsel also relies on United States v. Dickerson, 413 F.2d 1111 (7th Cir.1969). However, in the latter case, the holding was that there was no need for such warnings until *after* the case had been transferred to the Intelligence Division.

Two of our recent decisions bear on this point: United States v. Lockyer, 448 F.2d 417 (10th Cir.1971), and Hensley v. United States, 406 F.2d 481 (10th Cir.1968). In the instant case, at the time of the interview about which complaint is made, Michals was not in custody, nor had the case been referred to the Intelligence Division of the Internal Revenue Service. Hence, under *Lockyer* or *Hensley* the trial court did not err in refusing to suppress the statements made by Michals to revenue agent Monahan. The latter's investigation, which was civil in nature, was incomplete and, as the trial court observed, Monahan was "under an obligation" to at least make inquiry of Michals and afford him the opportunity to explain.

■ As indicated, Michals filed a motion for a change of venue which was based in the main on newspaper publicity occurring in 1968 concerning his restaurant as being a "hangout" for hippies and the efforts of city officials to close the establishment. Trial of the instant case was not until November 1971, and the trial court felt that the passage of time had dimmed any adverse effect on Michals of such publicity. Without going into detail, we find no abuse of discretion on the part of the trial court in denying the motion for a change of venue. Nothing occurred in the actual selection of the jury to indicate that the jurors who heard the case were anything other than fair and impartial jurors. This case comes well within the ambit of such cases as United States v. DeLuzio, 454 F.2d 711 (10th Cir.1972), cert. denied, 407 U.S. 922, 92 S.Ct. 2467, 32 L. Ed.2d 808 (1972), and Welch v. United States, 371 F.2d 287 (10th Cir.1966), cert. denied, 385 U.S. 957, 87 S.Ct. 395, 17 L.Ed.2d 303 (1966).

■ The inquiry concerning Michals' monthly payments of $50 to the Denver Juvenile Court was quite limited and under the circumstances nonprejudicial in nature, even assuming that such be improper. However, in a case of this type, inquiry into cash inflow and outflow is the usual, and the trial court properly limited the scope of the inquiry, which merely established the fact of payment.

■ Finally, counsel asserts that the trial court erred in denying his motion for a directed verdict of acquittal on the general grounds that the Government's evidence was insufficient to carry the case to the jury. In this regard, particular complaint is made concerning depreciation schedules. Without going into detail, our study of the record indicates that the evidence is amply sufficient to support the jury's verdict. As indicative of such, the evidence showed that in addition to extensive expenditures in cash from money that did not go through his bank accounts, Michals made net deposits in his bank accounts in 1965 of over $31,000 and in 1966 of over $65,000, which were far in excess of the gross income reported on his tax returns for those years, namely, $6,918.-32 for 1965 and $16,888.44 for 1966.

Judgment affirmed.