UNITED STATES of America, Plaintiff,

v.

Richard C. ERSBO, Defendant.

No. 4–75 Cr. 25.

United States District Court, D. Minnesota, Fourth Division.

May 30, 1975.

Robert G. Renner, U. S. Atty. by Richard E. Vosepka, Asst. U. S. Atty., for plaintiff.

Neal J. Shapiro, Bernick & Shapiro, Minneapolis, Minn., for defendant.

MEMORANDUM AND ORDER

ALSOP, District Judge.

The indictment charges the defendant with three counts of wilfully and knowingly filing a joint income tax return for the calendar years 1969, 1970, and 1971 which he did not believe to be true and correct in every material matter, in violation of 26 U.S.C. § 7206(1). Defendant has moved the court for an order suppressing all statements made by him to IRS agents and all evidence turned over by him to IRS agents after April 26, 1973. The basis for these motions is that the IRS special agent failed to advise defendant of his rights as required by the November 26, 1968, IRS News Release IR–949.

Prior to April 26, 1973, defendant Ersbo, a Lieutenant in the Fraud and Forgery Division of the Minneapolis Police Department, had met with a revenue agent of the IRS. Certain records and documents, which are the subject of the motion to suppress evidence, had been produced by Ersbo for the agent and were examined and returned to Ersbo. On April 26, 1973, special agent Michael A. Brandes of the IRS Intelligence Division attempted to contact Ersbo and when unsuccessful, left word for Ersbo to call. A meeting was arranged for April 30, 1973, between special agent Brandes and defendant Ersbo to be held at Ersbo's office at 1910 Lowry Avenue North, Minneapolis, Minnesota. At the April 30th meeting, special agent Brandes and special agent George introduced themselves to Ersbo and explained that the function of the IRS Intelligence Division was to investigate possible criminal matters relating to income tax returns. Special agent Brandes began to advise Ersbo concerning his rights when Ersbo stopped him saying, in effect, that he was familiar with the *Miranda* warning, that he knew his rights, and that agent Brandes did not have to give him his rights. Documents and records were produced by Ersbo that were the subject of previous examination by revenue agents.

A second meeting was held between special agent Brandes and Ersbo at the same location on May 10, 1973. Brandes acknowledged the previous statement by Ersbo that he was familiar with his rights, but went on to discuss Mr. Ersbo's right to have an attorney attend the present meeting. Mr. Ersbo explained that he knew of his right to have an attorney at the meeting, but indicated that he did not desire to hire one at that particular time.

According to special agent Brandes, the defendant was at no time placed under arrest or within custody during the April 30th and May 10th meetings.

The IRS News Release IR–949, November 26, 1968, reads in part as follows:

One function of a Special Agent is to investigate possible criminal violations of Internal Revenue Laws. At the initial meeting with a taxpayer, a Special Agent is now required to identify himself, describe his function, and advise the taxpayer that anything he says may be used against him. The Special Agent will also tell the taxpayer that he cannot be compelled to incriminate himself by answering any questions or producing any documents, and that he has the right to seek the assistance of an attorney before responding.

Defendant argues that the IRS warning which was to be given even at a non-custodial investigation is broader than the *Miranda* warning. The *Miranda* warning requires that at a custodial interrogation defendant be advised "that he has the right to remain silent, that anything he says can be used against him in a court of law, that he has the right to the presence of an attorney, and that if he cannot afford an attorney one will be appointed for him . . . ." Miranda v. Arizona, 384 U.S. 436, 479, 86 S.Ct. 1602, 1630, 16 L.Ed.2d 694 (1966). The IRS warning, defendant points out, requires a further explanation by the special agent that the taxpayer "cannot be compelled to incriminate himself by . . . producing any documents . . . ." In particular, defendant's argument is that even though he waived his *Miranda* rights, it was necessary for agent Brandes to explain that defendant did not have to produce any documents. Failure to give this further warning, defendant contends, requires suppression of all statements and evidence obtained subsequent to that omission.

Defendant is not without support for his theory. Courts have held that even in a non-custodial investigation conducted by IRS Special Agents, failure to give

the publicized IRS warning supplied grounds for suppression of evidence. United States v. Leahey, 434 F.2d 7 (1st Cir. 1970); United States v. Heffner, 420 F.2d 809 (4th Cir. 1969). *See also* United States v. Lockyer, 448 F.2d 417 (10th Cir. 1972). The rationale for these decisions is that the dual civil-criminal nature of tax investigations places the taxpayer in the position of not knowing whether the information that he is providing will be used against him in a criminal proceeding or will merely subject him to additional civil tax liability. The IRS, in response to this recognizable conflict, promulgated and publicized [1] regulations that would effectively warn the taxpayer that the investigation had changed in nature from civil to criminal. Because the agency violated its own procedures and the warning was not provided, the courts suppressed the evidence thereafter obtained. United States v. Leahey, *supra*; United States v. Heffner, *supra.*

It is important to note that in *Heffner, supra,* the special agent procured an oral statement from the taxpayer prior to the publication of News Release IR–897, but after the release the special agent obtained the taxpayer's signature on the statement without providing a warning that this was a criminal investigation or that the taxpayer could retain counsel. United States v. Heffner, *supra,* 420 F.2d at 811. The court held that although the statement itself was not introduced, it was apparent from the proceedings that "the jury knew that there existed a signed, written confession." *Id.* at 813. The court remanded the case for further proceedings without use of the signed statement.[2]

In *Leahey, supra,* the defendant had several contacts with employees of the IRS who were not special agents. Later, special agents met with defendant without disclosing, as required by the IRS procedure, that they were investigating possible criminal tax fraud.[3] At a second meeting, bank statements and books were obtained from the taxpayer by the special agents without mention of the criminal investigation or any other warning. United States v. Leahey, *supra,* 434 F.2d at 8. The court held that this obvious failure of the agency to conform to its announced procedures was sufficient grounds to uphold the lower courts suppression of the information and books and records obtained at the two meetings in question. *Id.* at 11.

The defendant cites a more recent case, United States v. Wohler, 382 F.Supp. 229 (D.Utah 1973), for the proposition that failure to give the specific portion of the November 16, 1968, news release dealing with the right to refuse production of possible incriminating "documents" caused the warning to be invalid. In *Wohler, supra,* the special agent warned the taxpayer that the Intelligence Division investigates possible criminal violations of tax law and gave further warning as required by the news release though failing to mention that the taxpayer was not required to furnish documents. United States v. Wohler, *supra,* 382 F.2d at 233. The court went on to say however, that the facts indicate that the taxpayer was informed of this right prior to furnishing the records and that the warning, though dis-

---

1. These cases discuss a news release on October 3, 1967, IR–897. The news release of November 26, 1968, IR–949 changed the warning provided for in the October 3, 1967 release by requiring that the agent, in addition to identifying himself and his function at the first meeting, must further advise the taxpayer of his rights at that time rather than waiting until the taxpayer was in custody or the investigation proceeded beyond the preliminary stage.

2. The court acknowledged that defendant would probably not be retried because by the date of the court decision more than 16 months out of a two year sentence had already been served.

3. The procedure in effect at that time also required further warnings if the investigation proceeded beyond preliminary inquiry. News Release IR–897, October 3, 1967.

jointed, "was sufficient to satisfy the requirements of IRS procedure in apprising the defendant of his rights." *Id.* The court did suppress certain worksheets and information obtained from the defendant subsequent to the initial interviews when the special agent had mislead the defendant by giving him the impression that the investigation had changed back to one civil in nature. *Id.* at 236. Upon careful analysis, the case does not support the proposition that leaving out the warning concerning documents is necessarily fatal to the validity of the warning itself.

In another case involving the sufficiency of the IRS warning, the Tenth Circuit held that the defendant had the duty to show that noncompliance with the procedure was prejudicial. United States v. Bettenhausen, 499 F.2d 1223, 1231 (10th Cir. 1974). The defendants met with various special agents during the investigation process. The record was not clear as to exactly what warnings were given; however, some warnings were given at each meeting. The court, without determining whether the published IRS procedure conferred procedural rights on the taxpayer, was unwilling to accept the contention that the warnings were inadequate in that case. *Id.*

> While compliance with the *Miranda* requirements themselves, when applicable must be demonstrated by the prosecution before introducing a defendant's incriminating statements, Miranda v. Arizona, 384 U.S. 436, 479, 86 S.Ct. 1602, 16 L.Ed.2d 694, as to the administrative requirements relied on here, we feel that it should be incumbent on the one claiming a violation of the administrative procedures to demonstrate noncompliance prejudicial to him. . . . And the focus should be on whether there was a substantial omission. . . . [citations omitted] *Id.*

The position of the Eighth Circuit Court in reference to the issue of failure to provide warnings is not well defined. In Cohen v. United States, 405 F.2d 34 (8th Cir. 1968), cert. denied, 394 U.S. 943, 89 S.Ct. 1274, 22 L.Ed.2d 478 (1969), the court held that IRS agents, revenue or special, are not required to provide *Miranda* warnings in pre-custodial investigations. *Id.* at 40. However the court expressed concern that agents not "mislead a taxpayer into believing that the investigation is exclusively civil in character and will not lead to criminal charges." *Id.* at 36. The holding in *Cohen, supra,* was relied upon two years later in United States v. Brevik, 422 F.2d 449 (8th Cir. 1970), cert. denied, 398 U.S. 943, 90 S.Ct. 1861, 26 L.Ed.2d 276 (1970). Both cases, however, dealt with factual situations in which the investigations had been completed prior to the October 1967 and November 1968 IRS News Releases.

In United States v. Middleton, 70–2 U.S.T.C. 9499 (D.Minn.1970), Judge Larson confronted a factual situation in which the initial interviews by special agents were conducted prior to the news release of October 3, 1967, and other interviews were conducted after that time. Even though no warning of the criminal nature of the investigation was given at these later interviews, the court was convinced from the record that defendants were aware of that fact. The court, after first acknowledging that *Cohen* did not involve a fact situation where the challenged interview took place after the news releases, relied on that case for support in denying the motion to suppress indicating that the court in *Cohen* had addressed itself to that problem. The court stated as follows:

> The procedures outlined in the instructions are a step forward in tax administration and will be among the factors considered by this Court in determining whether the nature of an investigation has been misrepresented. They fall short, however, of extending to the taxpayer the protections set forth in *Escobedo* [*v. Illinois* 378 U.S.

478, 84 S.Ct. 1758, 12 L.Ed.2d 977] and *Miranda*. United States v. Middleton, *supra,* quoting Cohen v. United States, *supra,* 405 F.2d at 39.

In the instant case, taxpayer Ersbo was informed at the first meeting with special agent Brandes on April 30, 1973, that the Intelligence Division was investigating possible criminal matters relating to Ersbo's tax returns. Special agent Brandes also attempted to proceed with the IRS warning[4] but was stopped by Ersbo who explained that he understood his *Miranda* rights. The court is convinced that Ersbo, a police officer with 13 or 14 years experience, did in fact make a voluntary acknowledgment of a warning equivalent to the *Miranda* warning. At the second meeting a discussion took place concerning Ersbo's right to have an attorney present at that meeting. Ersbo acknowledged that he was aware of this right. From these facts, the court is satisfied that the special agents did not mislead the defendant into believing that the investigation was civil in nature.

The defendant urges, however, that under the more enlightened theory set forth by *Heffner, supra,* and *Leahey, supra,* evidence should be suppressed if the special agent did not give the exact warning as set forth in the IRS News Release IR–949, November 26, 1968. These cases, however, dealt with factual circumstances where in the former an emotionally disturbed taxpayer was allowed to sign a written statement without being told that it involved a criminal investigation or that he had a right to have counsel present and, in the latter, a taxpayer provided incriminating evidence without being informed that the investigation had switched from civil to criminal or being informed of any rights whatsoever.

The court is not persuaded that the precise language of the warning need be given. Rather, the inquiry would more properly be viewed as to whether the agents mislead the taxpayer into believing that the investigation was civil in nature and as a part thereof, whether there was substantial compliance with the news release warning requirements. Cohen v. United States, *supra.* See United States v. Bettenhausen, *supra*; United States v. Bembridge, 458 F.2d 1262 (1st Cir. 1972); United States v. Potter, 385 F.Supp. 681 (D.Nev.1974).

In this case there would appear to be no doubt that Ersbo knew that the investigation was criminal in nature. Furthermore, by knowingly and voluntarily acknowledging his *Miranda* rights after being informed by special agent Brandes that the investigation was to seek out possible criminal tax law violations, Ersbo did in fact have within his knowledge substantially the same information that was found in the IRS news release warning.

Upon the foregoing,

It is ordered That the motion to suppress all statements made after April 26, 1973, be and the same is in all things denied.

It is further ordered That the motion to suppress all evidence turned over to special agents by the defendant after April 26, 1973, be and the same is in all things denied.

---

4. Defendant pointed out at the hearing that the warning that agent Brandes was about to give was different than the requirements of the November 26, 1968, IRS News Release in that the word "information" would have been used instead of the word "document".