PAUL R. BRIDGES AND ANN T. BRIDGES, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent; QUENTIN E. WOOD AND LOUISE L. WOOD, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Bridges v. Commissioner
Docket Nos. 14292-81, 14294-81.
United States Tax Court
T.C. Memo 1983-763; 1983 Tax Ct. Memo LEXIS 24; 47 T.C.M. (CCH) 716; T.C.M. (RIA) 83763; December 20, 1983. Marvin S. Lieber,Charles B. Gibbons, and Harry F. Klodowski, Jr., for the petitioners. Francis J. Emmons and Robert B. Marino, for the respondent. FEATHERSTON
MEMORANDUM FINDINGS OF FACT AND OPINION FEATHERSTON, Judge: These consolidated cases were assigned to and heard by Special Trial Judge John J. Pajak pursuant to the provisions of section 7456(c) [1] and Rules 180 and 181. [2] The Court agrees with and adopts his opinion which is set forth below. OPINION OF THE SPECIAL TRIAL JUDGE PAJAK, Special Trial Judge: These cases had been before the Court on *26 petitioners' Motions for Partial Summary Judgment filed on March 7, 1983. By order of the Court dated April 15, 1983, petitioners' motions were denied and the cases were ordered consolidated for purposes of a partial trial, briefing, and opinion solely on the statute of limitations issue now before us. [3]
Respondent determined deficiencies in petitioners' Federal income taxes as follows: Docket No.
Petitioners
Year
Deficiency
14292-81
Paul R. Bridges and
1976
$ 7,302.91
Ann T. Bridges
1977
2,923.94
1978
3,072.92
14294-81
Quentin E. Wood and
1975
$33,314.80
Louise L. Wood
1976
26,845.77
1977
12,560.11
1978
8,989.92
The underlying issues involve adjustments by respondent relating *27 to petitioners' participation in partnerships. [4] The issue for decision is whether respondent validly executed restricted consents in each case so that the statute of limitations does not bar the assessment of the tax deficiency for 1976 in docket No. 14292-81 and the tax deficiency for 1975 in docket No. 14294-81. [5]
FINDINGS OF FACT Some of the facts have been stipulated and are found accordingly. The stipulation of facts and attached exhibits are incorporated herein by this reference. Petitioners Paul R. Bridges and Ann T. Bridges (the Bridges) resided in Pittsburgh, Pennsylvania, *28 when their petition was filed. Petitioners Quentin E. Wood and Louise E. Wood (the Woods) were residents of Oil City, Pennsylvania, when their petition was filed. The term "petitioners" hereinafter refers to both the Bridges and the Woods. The respondent and taxpayers may consent in writing to keep open the statute of limitations as to assessment. Such consents may be general or restricted to specific items, and for indefinite or limited periods. Generally, restricted consents are requested by taxpayers when particular issues involving other parties or other taxable years have not been resolved. It benefits taxpayers to restrict a consent to specific issues, thereby limiting the scope of a subsequent deficiency determination. The Chief, Audit Division, [6] of a particular Internal Revenue Service District is not required to personally execute each restricted consent. The authority to execute restricted consents has been delegated to lower levels of authority in such districts. *29 The Bridges
The Bridges' joint 1976 Federal income tax return was filed timely on or before April 15, 1977. On December 15, 1979, the Bridges executed a Form 872-A, Special Consent to Extend the Time to Assess Tax, covering 1976 and other taxable years. [7] This form, which contained no restrictions as to issues, extended the statute of limitations for each of those years for an indefinite period of time. The document was executed on behalf of respondent on December 20, 1979, by C. K. Hoffman, "Returns Program Manager." The Bridges do not contest the validity of this consent. Subsequently, the Bridges and respondent executed a second Form 872-A, covering the taxable years 1976 and 1977. This second form again extended the statute of limitations for an indefinite period, but restricted adjustments basically to those arising from a specified partnership. The Bridges signed this restricted consent on December 22, 1980. *30 It was signed on behalf of respondent by James C. McCallister (McCallister) on December 29, 1980. McCallister was a reviewer on the Review Staff of the Parkersburg, West Virignia, District Director's Office (Parkersburg District). At that time, McCallister had a civil service grade of GS-13 and had the authority to execute restricted consents. The Parkersburg District is one of the smaller district director's offices. Consequently, a reviewer in that office had ready access to his supervisor. Generally, whenever a restricted consent was being considered, a reviewer in the office of the Parkersburg District would secure the oral approval of the Chief of the Audit Division, prior to sending the restricted consent to the taxpayers. The notice of deficiency covering the years 1976, 1977, and 1978 was mailed to the Bridges on March 25, 1981. The Woods
The Woods filed their 1975 joint Federal income tax return timely on or before April 15, 1976. Sometime in October 1978, the Woods requested that the consent for 1975 be restricted to only the unresolved partnership issues under examination in other districts. Thereafter, the Chief, Review Staff, and the Chief, Audit Division, *31 of the Pittsburgh District Director's Office (Pittsburgh District) approved the use of a restricted consent for 1975. On November 8, 1978, the Woods signed a Form 872, Consent Fixing Period of Limitation Upon Assessment of Tax, for their taxable year 1975 extending the statute of limitations until December 31, 1979. This consent restricted any adjustments for 1975 basically to those arising from certain specified partnerships. This restricted consent was signed on behalf of respondent by Ronald Karpuszka, Returns Program Manager, Pittsburgh District, on November 13, 1978. On December 4, 1978, the Woods signed a second Form 872 covering the year 1975. This form again extended the statute of limitations until December 31, 1979, but expanded the list of items for which adjustments could be made. The document was signed on behalf of respondent on December 11, 1978, by Allan Goppman, Acting Returns Program Manager of the Pittsburgh District. On November 5, 1979, a Form 872-A, Special Consent to Extend the Time to Assess Tax, covering 1975 was signed by the Woods. This document, which contained the same restrictions as those listed on the second Form 872, extended the statute *32 of limitations for an indefinite period of time. It was signed on respondent's behalf by David Sobien (Sobien) on November 13, 1979. Sobien was a reviewer on the Review Staff of the Pittsburgh District. Sobien had a civil service grade of GS-11 and had the authority to execute restricted consents. He executed approximately 200 to 300 consents a year. The Pittsburgh District is much larger than the Parkersburg District. As a result, the Pittsburgh District developed their own procedures concerning the use of restricted consents which were more formal than those of the Parkersburg District. These procedures, although unwritten, were used by the Pittsburgh District to achieve better internal control over the use of restricted consents. In the Pittsburgh District, the case file and the restricted consent would be submitted to a reviewer on the Review Staff. If the restricted language was appropriate, the Chief, Review Staff, would approve it and sign a memorandum. These documents were then forwarded to the Chief, Audit Division, for his approval and signature on the memorandum. The Chief of the Audit Division who held that position during the period the consent in question was *33 being prepared, approved all restricted consents that the Chief, Review Staff, approved. Thereafter, the restricted consents would be sent to the taxpayers for their signature. After the taxpayers returned the signed restricted consents, they would be executed on behalf of respondent by an employee to whom the authority had been delegated. The internal procedures and memorandums used by the Pittsburgh District were not the result of any formal requirement of the Internal Revenue Service. Other offices obtained oral approval from the Chief, Audit Division. On March 25, 1981, the Woods were issued a notice of deficiency covering the years 1975 through 1978. ULTIMATE FINDING OF FACT The Chief, Audit Division, of a particular district is not required to personally execute each restricted consent. Respondent validly executed restricted consents with petitioners to extend the statute of limitations for an indefinite period with respect to the years in question. The separate statutory notices of deficiency were sent timely to petitioners on March 25, 1981, with respect to the years in question. OPINION The Bridges contend that the assessment of any tax for 1976 is barred *34 by the statute of limitations. They claim that the second consent, dated December 29, 1980, to extend to period of time for assessment is invalid because McCallister failed to obtain the written approval of the Chief, Audit Division, of the Parkersburg District. [8] Similarly, the Woods contend that the assessment of any tax for 1975 is time barred. They claim that the third consent, dated November 13, 1979, extending the statute of limitations for 1975 is invalid because Sobien failed to obtain the written approval of the Chief, Audit Division, of the Pittsburgh District. [9]
*35 The Petitioners
Section 6501(a) provides as a general rule that: "Except as otherwise provided in this section, the amount of any tax imposed by this title shall be assessed within 3 years after the return was filed." Under this provision, the period for assessment for the Bridges' taxable year 1976 and for the Woods' taxable year 1975 would have expired prior to the issuance of the respective notices of deficiency, each issued on March 25, 1981. However, section 6501(c)(4)[10] provides for the extension of the period of limitations by written consent of the parties. For each of the years in question, petitioners and respondent entered into written agreements to extend the period for assessment. Petitioners now contend that the agreements are invalid because the persons signing on behalf of respondent failed to obtain the written approval of the Chief, Audit Division, in their respective districts. *36 Where the taxpayer makes a prima facie case by alleging that assessment is barred by expiration of the period of limitations on assessment, respondent must go forward with countervailing evidence to show that the period had not expired when the notice of deficiency was issued. Respondent's burden of going forward with the evidence is discharged by introducing into evidence a consent, valid on its face, which extends the period for assessment up to the mailing of the notice of deficiency. Concrete Engineering Co. v. Commissioner,19 B.T.A. 212 (1930), affd. 58 F.2d 566 (8th Cir. 1932); see Schenk v. Commissioner,T.C. Memo. 1976-363. As was explained in Concrete Engineering Co., once the consent appears to be regular on its face and in accordance with the law, we will presume that the party who signed on behalf of respondent acted within the scope of his authority, in the absence of a showing to the contrary. Where, as here, respondent has established that the consents were regular on their faces and, in accordance with the law, were *37 in writing, the burden is on petitioners to show that the parties who signed the consents acted without authority. Petitioners rely on Rev. Proc. 68-31, 1968-2 C.B. 917, and Internal Revenue Manual (I.R.M.) section 4541.71(3) as support for their position. Rev. Proc. 68-31 sets forth the procedures under which the scope of consents extending the limitation period for assessment may be restricted to one or more issues. Rev. Proc. 68-31 provides in section 3.02 that: The use of a restricted consent at the district level must be approved by the Chief, Audit Division, and at the Appellate level by the Chief, Associate Chief, or Assistant Chief of the Branch Office. [Emphasis added.] I.R.M. section 4541.71(3), as in effect when the agreements were executed, similarly provided that the "[u]se of restricted consents must be approved by the Chief, Audit Division." Petitioners argue that such approval is required but their argument jumps the track when they assert that such approval must be in writing for each restricted consent. We do not agree. There is no question but that all the consents executed by the parties were in writing *38 and that they contained the terms agreed to by the parties. Petitioners confuse the requirement in section 6501(c)(4) that a consent be in writing with the requirement in the procedural rules of respondent that the Chief, Audit Division, approve a consent. Despite petitioners' assertion to the contrary, there simply is no requirement in either Rev. Proc. 68-31 or I.R.M. section 4541.71(3) that the approval of the Chief, Audit Division, must be in writing. Nor do we believe such a requirement was ever intended. Cf. Wessel v. Commissioner,65 T.C. 273 (1975); Sanderling Inc. v. Commissioner,66 T.C. 743 (1976), affd. 571 F.2d 174 (3d Cir. 1978). In Wessel, involving the authority to issue a notice of deficiency, the Chief, Review Staff, had orally designated a senior reviewer to act in his stead while the chief was on vacation. The taxpayer in Wessel contended that the designation was invalid because it was not in writing. In rejecting the taxpayer's position, the Court stated that "we are not prepared to exact the burdensome formalistic detail of requiring a written designation to acting supervisory personnel *39 each time the incumbent of the position temporarily absents himself." Wessel v. Commissioner,supra at 276. The reviewers in the Parkersburg District had contact with their Chief, Audit Division, almost at will. Whenever a restricted consent was involved, the normal procedure was that the reviewer would discuss the taxpayer's file with the chief and secure his oral approval to issue the restricted consent. To require that this approval be in writing would impose a mere "formalistic detail" that would only burden the day-to-day operations of respondent without any resulting benefit to the taxpayers. That we will not do. Nor do we find any justification for imposing such a requirement on the Pittsburgh District simply because it happens to be larger. In short, oral approval satisfies the provisions of Rev. Proc. 68-31 and I.R.M. section 4541.71(c). See Sanderling v. Commissioner,supra;Wessel v. Commissioner,supra.In any event, we are satisfied that the reviewers, McCallister and Sobien, obtained the approval of their respective chiefs with respect to petitioners' restricted consents which the reviewers *40 executed in the course of carrying out their official duties. Concrete Engineering Co. v. Commissioner,supra.
Furthermore, it is well established law that procedural rules, such as those set forth in Revenue Procedures, are merely directory and not mandatory. As such, the failure to comply with a requirement contained therein will not render the action of respondent invalid. Rosenberg v. Commissioner,450 F.2d 529, 532 (10th Cir. 1971), affg. a Memorandum Opinion of this Court; Luhring v. Glotzbach,304 F.2d 560, 563-564 (4th Cir. 1962); Collins v. Commissioner,61 T.C. 693, 701 (1974). Similarly, noncompliance with I.R.M. requirements is viewed in the same light. United States v. Horne,714 F.2d 206 (1st Cir. 1983); see Tucker v. Commissioner,T.C. Memo. 1983-210. Thus it is clear that even if the reviewers received no approval, either written or oral, the consent agreements are valid as long as the reviewers had the requisite authority to sign on behalf of respondent. [11] *41 Petitioners, citing United States v. Heffner,420 F.2d 809 (4th Cir. 1969), and United States v. Leahey,434 F.2d 7 (1st Cir. 1970), argue that an administrative agency is bound by its rules, regulations, or procedures and that the failure to follow them invalidates any action taken in contravention with such rules. We think it sufficient to point out that both Heffner and Leahey involved prosecutions for criminal tax evasion and the failure of respondent's agents to satisfy the self-imposed strict warnings that were required to be given all such suspects with respect to their constitutional rights. [12] The overwhelming importance of such protection of the constitutional guaranties dictated the result in Heffner and Leahey. *42 In one case, the court specifically noted that the "result would have been different if the I.R.S. had violated a procedure designed to promote some other agency goal." United States v. Leahey,supra at 11. See Rosenberg v. Commissioner,supra at 533. Petitioners mistakenly rely on Cary v. Commissioner,48 T.C. 754 (1967). In Cary, one of respondent's agents changed a date on a Form 872 which had previously been signed by the taxpayer. The Court held that the agreement to extend the statute of limitations was invalid and the assessment of any tax was time barred. The Court's holding was based on the obvious lack of an "agreement" between the parties as required by section 6501. Here, petitioners have not alleged the lack of a statutory prerequisite to a valid extension. On the contrary, they *43 expressly consented to the extensions in the exact terms that appear on the consents. Petitioners merely have alleged a violation of one of respondent's own rules which was designed for respondent's internal administration. We reject petitioners' arguments that they should be extricated from an agreement to which they voluntarily consented and from which they benefited. The Bridges
We turn now to the question of whether in the Bridges' case the requisite authority to sign the restricted consent in question was delegated to McCallister. [13]
Section 6501(c)(4) provides for an extension of the statute of limitations where both the Secretary and the taxpayer so agree in writing. The term "Secretary" is defined in section 7701(a)(11)(B) to mean the "Secretary of the Treasury or his delegate." Section 7701(a)(12)(A)(i) defines the phrase "or his delegate" as "any officer, employee, or agency of the Treasury Department duly authorized by the *44 Secretary of the Treasury directly, or indirectly by one or more redelegations of authority, to perform the function mentioned or described in the context." Section 301.7701-9(b), Proced. & Admin. Regs., provides in pertinent part that if a function is vested by statute in the Secretary of the Treasury or his delegate, such function may be delegated or redelegated to a district director. Section 301.6501(c)-1(d), Proced. & Admin. Regs., specifically provides that a district director may sign consents extending the statute of limitations. The district director may redelegate the authority to sign consents to any "employee performing services under his supervision and control, unless such power to so redelegate is prohibited or restricted by proper order or directive." Sec. 301.7701-9(c), Proced. & Admin. Regs. The only restrictions on a district director's power to redelegate authority to sign consents were contained in Delegation Order No. 42 (Rev. 13), 1980-1 C.B. 571, which was in effect on December 29, 1980, when the consent agreement was executed by the parties thereto. [14] This order authorized district directors to redelegate their authority to sign all *45 consents to subordinates but restricted redelegations to those who were not lower than Examination[15] - Reviewers, Grade GS-11. On July 23, 1980, the Parkersburg District Director exercised the authority he had under Delegation Order No. 42 (Rev. 13).Pursuant to Dir--Park 42-1 (revised), the Parkersburg District Director redelegated his authority to sign all consents to "Reviewers (Examination), GS-11 and above." The only restriction on this authority to sign the consents was that it could not be redelegated. On December 22, 1980, the Bridges signed a restricted Form 872-A covering their taxable years 1976 and 1977. On December 29, 1980, McCallister signed that Form 872-A. On that date, McCallister was a reviewer with a civil service grade of GS-13 on the Review Staff of the Parkersburg District. It is obvious from the delegation and redelegation orders then in effect that McCallister was acting within his authority in signing the Form 872-A. [16] Thus, the consent was validly executed *46 on behalf of respondent.
Conclusion
In conclusion, we adopt as our own the statement in Cary v. Commissioner,supra at 763: A waiver proper on its face, relied on by the Commissioner, cannot be later repudiated by the taxpayer. As stated in Liberty Baking Co. v. Heiner,37 F.2d 703, 704 (C.A. 3, 1930), affirming 6 B.T.A. 1270 (1927), "The statute requires nothing but 'consent,' and it would be unconscionable to allow the taxpayer to afterwards repudiate a consent upon which the Commissioner has acted and relied." However, the "consent" required by the statute must be written. We have held that in order to be effective the waiver must be signed before the expiration of the statutory period for assessment *47 by both the taxpayer and the Commissioner. We observe that the decisions in these cases are appealable to the Third Circuit. Both of the written consents in question were validly executed prior to the running of the statute of limitations. Accordingly, petitioners are bound by their agreements and the assessments of any tax are not time barred. Sec. 6501(c)(4). The notices of deficiency were sent timely to petitioners for the years in issue.
To reflect the foregoing, An appropriate order will be entered.
Footnotes
1. All section references are to the Internal Revenue Code of 1954, as in effect during the tax years in issue, unless otherwise noted. ↩
2. All "Rules" references are to the Tax Court Rules of Practice and Procedure unless otherwise noted.↩
3. By stipulation, these cases are test cases on the statute of limitations issue in the following cases: Joseph E. Rusnock and Margaret Rusnock, docket No. 18959-81; Joseph Genstein and Dorothy Genstein, docket No. 18962-81; Irving S. Stapsy, docket No. 18963-81; Myron Friedlander and Bernice Friedlander, docket No. 19638-81; Noralco Corporation, docket No. 20578-82; and Myron Friedlander and Bernice Friedlander, docket No. 29147-82.↩
4. By stipulation, the parties to these cases have agreed, with respect to open years of petitioners for which deficiencies have been determined, to be bound by the resolution of the partnership issues in other test cases when the decisions in those cases become final. ↩
5. The petition filed in docket No. 14294-81 asserted the statute of limitations as a bar to the assessment of deficiencies for the taxable years 1975 and 1976. Petitioners' Post-Hearing Memorandum filed with the Court concedes that the statute of limitations had not expired for the 1976 taxable year in docket No. 14294-81.↩
6. Pursuant to an internal reorganization of respondent, the position of "Chief, Audit Division" was retitled "Chief, Examination Division." Delegation Order No. 42 (Rev. 9), 1978-2 C.B. 469↩. For convenience, we refer throughout this opinion only to the first title.
7. The stipulation of facts states that these years were the taxable years 1974, 1975, and 1976, but the consent itself shows that the taxable years were 1973, 1974, and 1976. Since 1976 is to only year here in issue, we will ignore this discrepancy.↩
8. Technically, a proper subsequent consent would supplant a prior consent. Ravin v. Commissioner,T.C. Memo. 1981-107↩, n. 3. The parties in the Bridges' case did not address the question of whether, if the second consent was found invalid, the first consent for an indefinite time kept the statute of limitations open, nor do we. 9. The Woods do not seriously question the validity of the second consent which is necessary to keep the limitation period open since the third consent was executed after the period normally would have expired. The parties focus on the third consent and so shall we. Furthermore, if the Woods intended to apply their arguments to the second consent, our reasoning and conclusions with respect to the third consent apply with equal force to the second consent.↩
10. Sec. 6501(c)(4) provides in pertinent part as follows: (4) Extension by agreement.--Where, before the expiration of the time prescribed in this section for the assessment of any tax * * * both the Secretary and the taxpayer have consented in writing to its assessment after such time, the tax may be assessed at any time prior to the expiration of the period agreed upon. The period so agreed upon may be extended by subsequent agreements in writing made before the expiration of the period previously agreed upon.↩
11. In their underlying motions for partial summary judgment, petitioners contend that the restricted consents must be signed only by the Chief, Audit Division, of the respective district. As our discussion above shows, these contentions are specious since only the approval of that chief is required. Nevertheless, since respondent requested an ultimate finding of fact on this point, we made such a finding.↩
12. We note that in United States v. Irvine,699 F.2d 43 (1st Cir. 1983), the First Circuit expressly held that United States v. Leahey,434 F.2d 7 (1st Cir. 1970), and its progeny are no longer binding precedent. Cf. United States v. Caceres,440 U.S. 741↩ (1979).
13. The Woods have made no argument that the authority to sign the restricted consents on respondent's behalf was not delegated to Sobien.↩
14. The authority for redelegation to reviewers grade GS-11 was originally provided by Delegation Order No. 42 (Rev. 2), 1969-1 C.B. 379↩. 15. See footnote 6, supra.↩
16. We also note that pursuant to Dir-Pgh-Delegation Order No. 7, Revised, the Pittsburgh District Director had similarly redelegated his authority to sign restricted consents to "Reviewer, GS-11 and above" effective Oct. 12, 1979, which was prior to the time Sobien (then a GS-11) signed the Form 872-A concerning the Woods.↩